IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


RALPH E WILLIAMS,

    Plaintiff,

v().                                                         Case No. 3:09cv437/LAC/EMT

MARINEMAX OF CENTRAL FLORIDA LLC,

    Defendant.
_____/


**ORDER ON SUMMARY JUDGMENT**


Pending before the Court are Defendant's Motion for Summary Judgment (doc. 7) and Plaintiff's Response in opposition to the Motion (doc. 9). Defendant has also filed a Motion to Strike Plaintiff's Response (doc. 10), to which Plaintiff responded (doc. 11). The Court has taken the matter under advisement and is now prepared to rule on Defendant's motions. For the reasons stated below, Defendant's motions are granted.

# I. BACKGROUND

For purposes of this motion the facts underlying this action are free from dispute. Plaintiff Ralph E. Williams' complaint, filed originally in the Circuit Court in and for Escambia County, Florida, on October 6, 2008, claimed negligence on the part of Defendant Marinemax of Central Florida LLC. The complaint was removed on October 1, 2009, after Defendant became aware through deposition testimony that the claim was in excess of the threshold amount for diversity jurisdiction.

The complaint concerns a fishing boat belonging to Plaintiff that was stolen on or about the overnight hours of March 7, 2007, from Defendant's boatyard where it was being stored and offered for sale. The boatyard was closed for the evening, and the boat was stored in an area that was surrounded by a chain link fence approximately seven feet in height with barbed wire on top. The fence was connected to a building that had entrance gates which were padlocked during non-business hours.

The theft was discovered the following morning. Todd Milne, an Assistant Manager at the boatyard, observed that a section of the chain link fence on the west side of the property had been either cut open or pushed over as if the thieves had driven a vehicle over the fence. Plaintiff's boat was the only one that was stolen. The theft was reported to the Escambia County Sheriff's Department, which investigated.

Milne, who had been employed at the boatyard for nine years, had never known of any thefts of boats before this theft, nor of any similar criminal activity in the general area where the boatyard was located. (Doc. 7, Ex. B).

## II. MOTION TO STRIKE

Defendant's Motion to Strike concerns the fact that Plaintiff did not serve upon Defendant a written report for his lone expert witness, Ronald Worst, until the time of his response to Defendant's summary judgment motion on April 22, 2010, 108 days after the deadline for such disclosures, as well as 50 days past the overall discovery deadline. Attached to the summary judgment response was an affidavit signed by Worst (doc. 9-2), addressing – as is relevant to this case – the extent to which the area surrounding Defendant's boatyard could be considered a high-crime area. The affidavit was dated April 14, 2010.

On December 21, 2009, Plaintiff reportedly[1] served Defendant with an Expert Witness List that only identified Worst by name, stating that Worst's opinion had not been finalized at that time. However, no further information regarding Worst was provided until the dates of the summary judgment filings referenced above. Concurrent with his response to Defendant's Motion to Strike, Plaintiff filed a motion for additional time to make expert disclosures, essentially so that Worst's report would be accepted as timely. The motion was denied in an Order issued by the Magistrate Judge who noted that prior to the close of

---

[1] Defendant contends that it never received the Expert Witness List before its inclusion as an exhibit to Plaintiff's opposition to the motion to strike, filed April 22, 2010.

discovery Plaintiff was actively aware that Worst would need additional time to complete the expert report, yet Plaintiff failed to file for additional time until the deadline had long passed.[2] Plaintiff offers no explanation for his failure to seek a timely extension of the discovery deadlines.

Under Rule 37(c)(1) of the Federal Rules, a party that fails to disclose information required by Rule 26(a) "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *See also* Fed.R.Civ.P. 37(b)(2)(A)(ii). While the Court may consider other sanctions instead of or in addition to exclusion of the evidence, exclusion is the appropriate sanction.

> The federal courts' supervision of the discovery process, and the courts' concomitant authority to upbraid those who do not play by the rules, is rooted in the need for maintaining the integrity of the trial process. Hence, the impetus behind a court's deployment of sanctions is not merely to punish a party for untoward acts or omissions; it is, equally, to deter other litigants from disregarding the imperatives of the Civil Rules. Thus, in the Rule 26(e) context, preclusion can be imposed in response to a party's subversion of the trial process, even if the responsible party was guilty of laxity rather than bad faith.

*Thibeault v. Square D Co.*, 960 F.2d 239, 245-48 (1st Cir. 1992) (citations omitted).

Plaintiff asserts that there should be no prejudice to the Defendant that could not be cured by granting a continuance, but this overlooks the fact that Defendant has already prepared and filed its summary judgment motion. Should the Court allow the evidence from

---

[2] While the stated reason for the delay was that the local sheriff's office had not yet provided Worst with certain crime statistics necessary to his report, there is nothing in the record to suggest that Plaintiff was unaware of this problem, and in any event Plaintiff was aware of the delay regardless of its cause.

Plaintiff's expert, that would place a burden upon Defendant to recommence discovery and likely to refashion its summary judgment motion. A continuance is hardly an effective sanction in this instance since it places the more pronounced burden not on the guilty party but on the Court and the opposing party. *See id.* at 246. Moreover, "[i]f continuances were granted as a matter of course for violations of Rule 26(e), the rule could always be disregarded with impunity." *Id.* Therefore, the affidavit of expert witness Ronald Worst filed in support of Plaintiff's summary judgment response is stricken as untimely and will not be considered by the Court.

### III. MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "[T]he substantive law will identify which facts are material" and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.*

At the summary judgment stage, a court's function is not to weigh the evidence to determine the truth of the matter, but to determine whether a genuine issue of fact exists for trial. *See id.* at 249, 106 S. Ct. at 2510–11. A genuine issue exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party. *See id.* "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust Co. v. Fidelity and Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

When assessing the sufficiency of the evidence in favor of the nonmoving party, the court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993). The court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249–50, 106 S. Ct. at 2511. "A mere 'scintilla' of evidence supporting the . . . [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512).

## IV. DISCUSSION

Under Florida law, a claim of negligence requires that the following four elements be established: 1) that the defendant owed a duty, or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks; 2) that the defendant failed to conform to that duty; 3) that there existed a reasonably close causal connection between the nonconforming conduct and the resulting injury to the claimant; and 4) that the claimant suffered some demonstrable harm. *See Williams v. Davis*, 974 So.2d 1052, 1056 (Fla. 2007). As it concerns the first element, to ascertain whether there exists a duty to protect from a specific harm, it must first be determined, as a matter of law, that a "foreseeable zone of risk" was evident from the facts of the case. *See McCain v. Fla. Power Corp.*, 593 So.2d 500, 503 (Fla. 1992). "Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." *Id.* McCain v. Fla. Power Corp., 593 So.2d 500, 503 (Fla.1992); *see also United States v. Stevens*, 994 So.2d 1062, 1067 (Fla. 2008). A duty may arise through the defendant's act or omission that creates an unreasonable risk of harm to another through the foreseeable conduct of a third person. *Stevens*, 994 So.2d at 1067 (citing Restatement (Second) of Torts §§ 302-302B (1965)). However, "the defendant's conduct must create or control the risk before liability may be imposed." *Demelus v. King Motor Co. of Fort Lauderdale*, 24 So.3d 759, 761 (Fla. 4th DCA 2009).

In *Demelus*, the plaintiff claimed that an automobile dealership was negligent in its security practices by allowing a vehicle to be stolen from its lot. The court denied the claim, finding no duty on the part of the dealership because it had not experienced similar thefts in the past. 24 So.3d 765-66. While the court recognized that the dealership had experienced previous thefts, which were "described as a combination of employee thefts, customer thefts during business hours, or unexplained thefts without evidence of a break-in," there had been no prior crimes similar to the one at hand involving "a criminal breaking into a locked showroom and stealing the keys to vehicles, breaking out of the premises through a locked gate, or ramming blocker vehicles to exit the premises." *Id.* at 760, 762-63. The court further found that the dealership did not create any foreseeable zone of risk through any affirmative conduct of its own. On the contrary, the dealership's security practices guarded against the risk of theft. *Id.* at 762-63.[3]

The court in *Demelus* cited to two cases, *Vining v. Avis Rent-A-Car Systems, Inc.*, 354 So.2d 54 (Fla. 1977), and *Hewitt v. Avis Rent-A-Car System, Inc.*, 912 So.2d 682 (Fla. 1st DCA 2005), both of which found a duty to protect against a foreseeable zone of risk. Both of these cases were distinguished because they involved situations where the keys to the vehicles in question were readily available. In *Vining*, the stolen rental automobile had been

---

[3] "To secure its premises, King Motor employed an evening security guard who patrolled the well-lit property. Metal posts surrounded the perimeter of the property, such that ingress and egress of a vehicle was possible only through the designated entranceways. At night, the entranceways were gated, chained, and locked, and blocker vehicles were placed in front of each of these gates. The vehicles on the property were locked, and the keys to the vehicles were stored inside locked buildings. King Motor had a policy to ensure the security of its keys, and there is no evidence that King Motor's key security policy was violated on the night of the theft. The showroom from which the keys were stolen had hurricane-proof windows. The building did not have an alarm system or video surveillance cameras, which King Motor contends is typical of most U.S. dealerships." *Id.* at 762.

left in an airport parking lot with the keys in the ignition, the door open, and the car lights flashing,[4] while in *Hewitt*, employees of the defendant car rental company were regularly allowing acquaintances to borrow rental cars in "side deals," which the court found factually analogous to leaving the keys in a vehicle. *See id.* at 762-63; (*see also Michael & Philip, Inc. v. Sierra*, 776 So.2d 294, 299 (Fla. 4th DCA 2000) (Similarly distinguishing "key-in-ignition" cases on grounds that, in the case before it, the keys were left unattended on a board inside a private business). These cases were also distinguished because they involved high crime areas where car theft was rampant; by contrast, in *Demelus*, the dealership had experienced a more modest thirty-six break-ins and thefts during a six-year period.[5] Thus, the court distinguished *Vining* and *Hewitt* because the defendants in those cases were essentially "complicit in the theft." *Id.* at 763; *see also Michael & Philip*, 776 So.2d at 299.

In the case at bar, this Court finds that the facts are clearly more aligned with *Demelus* and different from *Vining* and *Hewitt*. In fact, where in *Demelus* previous thefts had been committed against the dealership in *Demelus*, albeit over a period of years, in the instant case there was no evidence of previous crimes to the boatyard. Neither was there evidence to show that the surrounding area was a high crime area or was otherwise conducive to criminal

---

[4] Additionally, this conduct amounted to a violation of Florida's Unattended Motor Vehicle statute, Section 316.097, Florida Statutes (1975),

[5] It should be noted that these cited cases dealt with not only the theft of the vehicles in question but also their involvement in subsequent vehicular accidents from which the plaintiffs derived their injuries. Nonetheless, in each case a holding on the duty to prevent foreseeable thefts of the vehicles was a necessary precursor to finding liability in the subsequent accident.

activity. Further, while the security measures in place did not seem quite as ample or stringent as those in *Demelus*, neither was the perceived need for such given the lack of crime. In any event, the security measures in place were appropriate, and Defendant's conduct in this regard certainly did not qualify as being "complicit in the theft," especially a theft so brazenly carried out as the one at hand evidently was.

## V. Conclusion

Therefore, the Court finds that the evidence, viewed in the light most beneficial to Plaintiff, demonstrates no foreseeable zone of risk creating an unreasonable threat of harm to Plaintiff from thefts by third persons. Accordingly, no particular duty on the part of Defendant is found, thus making summary judgment appropriate.

The Court's ruling in this matter may therefore be summarized as follows, and **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Strike (doc. 10) is **GRANTED** as detailed herein.

2. Defendant's Motion for Summary Judgment (doc. 7) is **GRANTED**.

3. Consistent with this order, the Clerk of Court is directed to enter summary judgment in favor of Defendant Marinemax of Central Florida LLC. Plaintiff shall take nothing further by this action and goes without day.

4. The Clerk of Court is directed to close this case.

**ORDERED** on this 23rd day of February, 2011.

                                                         s/*L.A. Collier*
                                                          Lacey A. Collier
                                      Senior United States District Judge